NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KENNETH KOFI KOWUSU NIMAKO, | : | **Hon. Freda L. Wolfson** |
| Petitioner, | : | |
| | : | Civil No. 12-4909 (FLW) |
| v. | : | |
| CHRISTOPHER SHANAHAN, et al., | : | OPINION |
| Respondents. | : | |

**APPEARANCES**:

> PERHAM MAKABI
> 125-1- Queens Blvd. Suite 6
> Kew Gardens, NY  11415
> Attorney for Petitioner
>
> PETER G. O'MALLEY
> Office of the U.S. Attorney
> 970 Broad Street Suite 700
> Newark, NJ  07102
> Attorney for Respondents

**WOLFSON**, District Judge:

Kenneth Kofi Kowusu Nimako, confined at Monmouth County Correctional Institution in Freehold, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS").  Respondents filed an Answer, a declaration, and several exhibits, and Petitioner filed a Reply.  This Court holds that Nimako's detention is governed by 8 U.S.C. § 1226(a) because DHS did not take Nimako into custody when he was released on July 26, 2007, from criminal incarceration for an offense

underlying the removal charges (but instead waited for almost five years to take him into custody), and grants a Writ of Habeas Corpus directing the Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to determine if Nimako is a flight risk or danger to the community.

## I.  BACKGROUND

Kenneth Kofi Kowusu Nimako, a native and citizen of Ghana, challenges his detention in the custody of DHS at Monmouth County Correctional Institution.  The facts are undisputed. Nimako emigrated to the United States from Ghana as a lawful permanent resident on July 30, 1997, at the age of 18.  (Dkt. 7-2 at 2.)  On November 23, 2005, the United States filed a criminal complaint as to Nimako, and on November 30, 2005, he was arrested and released on $50,000 bond.  See United States v. Nimako, Cr. 06-0296-LTS-1 (S.D.N.Y. docketed Mar. 30, 2006).  On April 5, 2007, Nimako pled guilty to counts one through four of the superseding indictment, i.e., conspiracy to commit bank fraud, bank fraud, conspiracy to commit access device fraud, and access device fraud.  On July 26, 2007, District Judge Laura Taylor Swain sentenced him to time served with respect to each count of conviction.

On May 22, 2012, DHS arrested Nimako and served him with a Notice of Custody Determination and Notice to Appear for removal.  (Dkt. 7-4 at 3-6.)  The Notice to Appear charged him with removal pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act, based on his conviction on July 26, 2007, for conspiracy to commit bank fraud, bank fraud, conspiracy to commit access device fraud, and access device fraud.  In the Notice of Custody Determination, dated November 22, 2010, and served May 22, 2012, DHS determined that Nimako would be detained pending a final determination on removal.  (Dkt. 7-4 at 3.)  Nimako

appeared for a master calendar hearing before the Immigration Judge on June 12, 2012, and August 16, 2012; the Immigration judge adjourned proceedings until October 24, 2012. (Dkt. 7 at 3.)

On August 3, 2012, Nimako filed the § 2241 Petition presently before this Court. In the Petition, Nimako asserts that DHS lacks the statutory authority to detain him under 8 U.S.C. § 1226(c) because DHS failed to take him into custody when he was released in 2007 from criminal incarceration for the offenses underlying his removal charges. He contends that DHS is authorized to detain him pursuant to 8 U.S.C. § 1226(a), provided the Immigration Judge determines after a hearing that he is a flight risk or danger to the community. He seeks a Writ of Habeas Corpus directing DHS to either release him from custody or provide a bond hearing.

By Order entered August 10, 2012, this Court ordered service and ordered respondents to file an answer and relevant documents within 15 days. DHS filed an Answer, declaration and several documents, arguing that § 1226(c) mandates Nimako's pre-removal-period detention, regardless of whether he is a flight risk or danger to the community. In his Reply, Nimako argues that he is not subject to mandatory detention under § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for the underlying removeable offense.

## II. DISCUSSION

The question in this case is narrow: whether 8 U.S.C. § 1226(c) requires DHS to mandatorily detain Nimako pending a final decision on his removal where DHS did not take him into custody when he was released from criminal incarceration for the offense underlying his

removal, but instead waited for five years to take him into custody.[1]  The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's reading of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001), that mandatory pre-removal period detention applies to any alien who was released from criminal incarceration at any time after October 8, 1998, for a specified offense underlying the removal, regardless of how long the alien lived in the community after release.  Nimako argues that the statutory command that DHS "shall take into custody any alien . . . when the alien is released" does not include Nimako because DHS did not take him into custody when he was released in 2007 from criminal incarceration for a specified removable offense, but waited for five years to take him into custody on May 22, 2012.

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his

---

[1] The issue is pending before the Third Circuit in Sylvain v. Holder, C.A. No. 11-3357 (3d Cir. docketed Aug. 31, 2011) (DHS appealed Judge Pisano's order granting habeas relief and ordering a bond hearing), and Desrosiers v. Hendricks, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012) (petitioner's appeal of Judge Hochberg's order denying habeas relief), but argument has not been scheduled in either appeal.

mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c).  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F. 3d 221, 226 (3d Cir. 2011).

B.  Statutory Authority to Detain Pending Outcome of Removal Proceeding

Section 1226 governs the pre-removal-period detention of an alien.  Section 1226(a) authorizes the Attorney General to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a).  Section 1226(a) authorizes the Attorney General to release an alien on bond, pending a decision as to whether that alien is to be removed, "except as provided in subsection (c)." Id.  The exception in § 1226(c) commands that the Attorney General "shall take into custody any alien . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1).  An alien detained under § 1226(c) must be detained until his removal is final, regardless of whether he is a flight risk or danger to the community, unless the Attorney General determines that the alien should be part of the federal witness protection program, provided detention has not become unreasonably prolonged.  See Diop v. ICE/Homeland Sec., 656 F. 3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community").  Section 1226 provides in full:

> (a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General –

  (1) may continue to detain the arrested alien; and

  (2) may release the alien on –

        (A) bond of at least $1,500 . . ; or

        (B) conditional parole; but

   (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who -

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

In this case, since Nimako's detention has not yet become prolonged, see Diop at 232, the outcome of this case depends on the meaning of the following words in § 1226(c)(1): "The Attorney General shall take into custody any alien [specified in this section], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). The government argues that this language mandates Nimako's detention beginning on May 22, 2012, because he was released from criminal incarceration for a removable conviction listed in § 1226(c) in 2007, even though Nimako has lived in the community for years. Specifically, the government argues that this Court should defer under Chevron to the BIA's interpretation of § 1226(c) in Matter of Rojas, 23 I.&N. Dec.

117 (BIA 2001), because the statutory language is ambiguous and it is reasonable to read "when the alien is released" to mean "any time after the alien is released."

(1) What was the BIA's Holding in Matter of Rojas?

Matter of Rojas involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody.  See Matter of Rojas, 23 I. & N. Dec. 117.  First, the BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings.  Id. at 120.  The BIA stated that, although "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement . . . Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens."  Id. at 122.  The BIA

> construe[d] the phrasing "an alien described in paragraph (1)," as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the "when released" clause.  Our interpretation is derived from the natural meaning of the statutory language, from the object and design of the statute as a whole, and from the history of the mandatory detention provisions.  It is reinforced by practical concerns that would otherwise arise.

Matter of Rojas, 23 I. & N. Dec. at 125.

The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into Service custody immediately upon his release from state custody."  Matter of Rojas, 23 I. & N. Dec. at 127.  Board member Lory Diana Rosenberg

wrote a dissenting opinion in which six board members joined.  Board member Rosenberg opined:

> The word '"when' [is defined] as 'just after the moment that.'"
> Alikhani v. Fasano, 70 F. Supp. 2d 1124, 1130 (S.D. Cal. 1999)
> (quoting *Webster's Third New International Dictionary* 2602 (3d
> ed. 1976).  Therefore, as one court noted, the clear language of the
> statute requires that "the mandatory detention of aliens 'when' they
> are released requires that they be detained at the time of release."
> Alikhani v. Fasano, supra, at 1130; see also Velasquez v. Reno, 37
> F. Supp. 2d 663, 672 (D.N.J. 1999) ("This court cannot simply
> ignore the plain language of the statute which provides that an
> alien is to be taken into custody 'when the alien is released.'").  As
> another court noted, "Congress could have required custody
> 'regardless of when the alien is released' or 'at any time after the
> alien is released,'" but did not do so.  Alwaday v. Beebe, 43 F.
> Supp. 2d 1130, 1133 (D. Or. 1999) . . . .  These courts have
> concluded uniformly that "[t]he plain meaning of this language is
> that it applies immediately after release from incarceration, not to
> aliens released many year[s] earlier."  Pastor-Camarena v. Smith,
> supra, at 1417-18.

Matter of Rojas, 23 I. & N. Dec. at 132-33 (Rosenberg, dissenting).[2]

The dissenting opinion of Board Member Rosenberg concluded:

> The stretch of interpretation required by the majority's construction
> is not supported by the plain language of the statute and is
> unreasonable.  The aliens described in paragraph (1) of section
> [1226(c)] are the ones who are deemed to be inadmissible and
> deportable for the cited violations and taken into custody when
> they are released from criminal incarceration.  These are the aliens
> described in paragraph (2) as the ones who may not be released.
>
> The interpretation I reach from a straightforward reading of the
> plain language of the statute would allow for a hearing when an
> individual alien, such as this respondent, has already been released

---

[2] The Velasquez opinion cited in the dissenting opinion of Board Member Rosenberg was written by then New Jersey District Judge, now Third Circuit Court of Appeals Judge (Senior), Maryanne Trump Barry.

9

> into the community, and it would authorize the detention of such
> individuals where warranted following an individualized hearing.

Matter of Rojas, 23 I. & N. Dec. at 139 (Rosenberg, dissenting).

(2) Is This Court Required to Defer to the BIA's Interpretation of § 1226(c) in Rojas?

If "Congress has directly spoken to the precise question at issue," a court and an agency "must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987) (quoting Chevron, 467 U.S. at 843 n. 9). Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, (2004).

The parties acknowledge that the undersigned has twice rejected the government's argument that § 1226(c) is ambiguous. See Kot v. Elwood, 2012 WL 1565438 (D.N.J. May 2, 2012); Christie v. Elwood, 2012 WL 266454 (D.N.J. Jan. 30, 2012). In Christie, this Court found:

> Congress clearly intended to give the Attorney General the authority of mandatory
> detention under § 1226(c)(1) only if the government takes the alien into custody
> immediately when the alien is released from custody resulting from the removable
> offense enumerated in § 1226(c). Because the plain language of the statute
> commands that an alien is to be taken into custody "when the alien is released,"
> this Court may not defer to the BIA's re-writing of the statute. Because the
> Attorney General did not take Harold Christie into custody when he was released
> from criminal incarceration for a removable offense in 1999, but allowed him to

> live in the community for 12 years before taking him into custody in September 2011, Christie is not subject to the mandatory detention exception in § 1226(c)(1). Christie's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond if the Immigration Judge finds that he is neither a flight risk nor a danger to the community.

Christie at *9 (citation and internal quotation marks omitted).

DHS now argues that this Court should reconsider the issue in light of the Fourth Circuit's May 25, 2012, decision in Hosh v. Lucero, 680 F.3d 375 (4th Cir. 2012). Based on the following analysis, the Fourth Circuit held that § 1226(c) is ambiguous:

> The meaning of § 1226(c) is not plain to us. To be sure, "when in § 1226(c) can be read, on one hand, to refer to "action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) (citing The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000)). On the other hand, "when" can also be read to mean the temporally broader "at or during the time that," "while," or "at any or every time that . . . ." Free Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/ when (last visited April 30, 2012). We must therefore consider the BIA's interpretation.

Hosh, 680 F.3d at 379-80.

The Fourth Circuit deferred to the BIA's interpretation of the statute in Rojas because the interpretation was not "'arbitrary, capricious, or manifestly contrary to the statute.'" Hosh, 680 F.3d at 378 (quoting Chevron, 467 U.S. at 844).

This Court notes, however, that no District Court (outside the Fourth Circuit) post Hosh has been persuaded to follow the Fourth Circuit's analysis in Hosh.[3] See Cox v. Elwood, 2012 WL 3757171 *4 (D.N.J. Aug. 28, 2012) ("This Court is also not persuaded by the Fourth

---

[3] Judge Hochberg deferred to Rojas in a post-Hosh decision, but Judge Hochberg followed her own pre-Hosh holding in Desrosiers v. Hendricks, Civ. No. 11-4643 (FSH) sl. opinion (D.N.J. Dec. 30, 2011), one of the cases pending before the Third Circuit. See Espinoza-Loor v. Holder, 2012 WL 2951642 (D.N.J. July 2, 2012) (No. 11-6993 (FSH)).

11

Circuit's decision in Hosh to defer to the BIA's interpretation of "when . . . released" as it is not binding authority on this Court . . . .  Until the Third Circuit decides this issue, this Court will rely on the plain meaning of § 1226(c)"); Martial v. Elwood, 2012 WL 3532324 (D.N.J. Aug. 14, 2012) (same); Bogarin-Flores v. Napolitano, 2012 WL 3283287 *3 (S.D. Cal. Aug. 10, 2012) ("The Fourth Circuit . . . found Rojas was decided correctly but did not present any independent reasoning or statutory construction, instead giving deference to the BIA's decision . . . .  This Court finds that the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody"); Dimanche v. Tay-Taylor, 2012 WL 3278922 (D.N.J. Aug. 9, 2012); Munoz v. Tay-Taylor, 2012 WL 3229153 *3 (D.N.J. Aug. 6, 2012) ("This Court is also not persuaded by the Fourth Circuit's decision in Hosh to defer to the BIA's interpretation"); Gonzalez-Ramirez v. Napolitano, 2012 WL 3133873 n.8 (D.N.J. July 30, 2012) ("The Court recognizes the recent decision by the Court of Appeals for the Fourth Circuit . . . .  Absent a directive from the Third Circuit, the Court respectfully declines to adopt the Hosh holding and will instead follow the reasoning utilized by the First Circuit in Saysana").

      The Court joins these above-cited district courts in finding that Hosh is not persuasive.  Rather, the Court has found in its Christie and Kot rulings that the First Circuit's rationale and holding in Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009), comport with this Court's reading of the statute.  However, the Government, nevertheless, insists that reliance on Saysana is "wholly misplaced."  (Dkt. 7 at 14.)  The Court disagrees.  Indeed, the Government overlooks that Saysana expressly, and persuasively, held that the "when the alien is released" language in 1226(c) is clear:  "We have concluded that the text of the statute is clear.  Consequently, because

12

the 'when released' language is unambiguous, there is nothing for the agency to interpret - no gap for it to fill - and there is no justification for resorting to agency interpretation to address an ambiguity." Saysana, 590 F.3d at 16. The Government also disregards the consistency in this Court's and Saysana's reading of § 1226(c) as clearly envisioning a continuous chain of custody of dangerous aliens: "The Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody." Saysana, 590 F.3d at 16 (quoting Quezada-Bucio v. Ridge, 317 F.Supp. 2d 1221, 1230 (W.D. Wash. 2004)). In fact, Saysana expressly rejected the Government's contention that the BIA's reading of § 1226(c) is "consistent with Congress'[s] longstanding intent to detain certain criminal aliens," instead finding that "the 'when released' language serves this more limited but focused purpose of preventing the return to the community of those released in connection with the enumerated offenses, as opposed to the amorphous purpose the Government advances." Id. at 17.[4] And the First Circuit recognized that, by definition, aliens who have lived in the community for years after release from criminal incarceration are those who are among the least likely to pose a flight risk or danger to the community, the presumed reasons for mandatory detention. See Saysana, 590 F.3d at 17-18 ("By any logic, it stands to reason that the more remote in time a conviction becomes and the more time after a conviction an individual spends in a community, the lower his bail risk is likely to be").

---

[4] See also Saysana, 590 F.3d at 13 ("The statutory language embodies the judgment of Congress that such an individual should not be returned to the community pending disposition of his removal proceedings. Both the language and the structure of the statutory provision state this mandate in a clear and straightforward manner").

More importantly, the Government argument in this respect disregards that, in <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221 (3d Cir. 2011), the Third Circuit also read § 1226(c) as envisioning a continuous chain of custody of criminal aliens.  In <u>Diop</u>, the Third Circuit noted that in enacting § 1226(c), "Congress was concerned with the immigration authorities' 'wholesale failure' to 'deal with the increasing rates of criminal activity by aliens.'  Section 1226(c) was intended to remedy this perceived problem by ensuring that aliens convicted of certain crimes would be present in their removal proceedings and not on the loose in their communities, where they might pose a danger."  <u>Id.</u> at 231 (quoting <u>Demore v. Kim</u>, 538 U.S. 510 (2003)).  As such, the Third Circuit's concerns are consistent with those of <u>Saysana</u>.

Finally, while the BIA and <u>Hosh</u> rely on dictionary definitions of the word "when," they do not fit the dictionary definitions into the language used in § 1226(c).  In other words, neither BIA nor the Fourth Circuit explains how the words "The Attorney General shall take into custody any alien . . . when the alien is released" can be read to state that "The Attorney General shall take into custody any alien . . . any time after the alien is released."  Indeed, given the dearth of analysis in <u>Hosh</u>, DHS has not persuaded this Court to follow the reasoning of the Fourth Circuit.[5]  Particularly when the Court finds that the statutory language of § 1226(c) is

---

[5] The Government also argues that this Court's ruling in <u>Christie</u> "strips" from DHS the power to act against criminal aliens and imposes a sanction on DHS if it does act within a certain defined but short time after the alien is released from criminal incarceration.  (Dkt. 7 at 16.)  However, DHS is not stripped of its power to detain dangerous criminal aliens, since these aliens can still be detained under § 1226(a).  As this Court explained in <u>Kot</u>,

> If this Court holds that Kot is not subject to mandatory detention under § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration, but waited for 12 years, then it does not follow that Kot must be released.  Rather, such a ruling means that the Immigration Judge will conduct a
> (continued...)

14

unambiguous.  In that regard, like many courts in this district, the Court finds that "[a]bsent a directive from the Third Circuit, th[is] Court respectfully declines to adopt the Hosh holding and will instead follow the reasoning utilized by the First Circuit in Saysana."  Gonzalez-Ramirez v. Napolitano, 2012 WL 3133873 at n.8.

As a result, this Court holds that Nimako is not subject to the mandatory detention exception in § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for a specified offense in 2007, but allowed him to live in the community for five years before taking him into custody in May 2012.  Nimako's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond if he is neither a flight risk nor a danger to the community.  This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Nimako with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

---

[5](...continued)
bond hearing, pursuant to 8 U.S.C. § 1226(a), and Kot will be released only if he poses neither a flight risk nor a danger to the community.

Kot, 2012 WL 1565438 at *8.

15

## III.  CONCLUSION

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

/s/ Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**

DATED: September 18, 2012